UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor,[1] <br><br> Plaintiff, <br><br> v. <br><br> SWEET LEMON, INC. d/b/a SWEET LEMONS THAI RESTAURANT, and PORNTHIP NEAMPONG, <br><br> Defendants. | Civil Action No. 1:20-cv-12217-RGS |

## SECRETARY OF LABOR'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Sweet Lemon, Inc. d/b/a Sweet Lemons Thai Restaurant and Pornthip Neampong (collectively, "Defendants") have admitted that they violated the overtime, tip-keeping, recordkeeping, and anti-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). Based on Defendants' admissions, there can be no genuine dispute as to any material fact in this case. Accordingly, Plaintiff Secretary of Labor, United States Department of Labor (the "Secretary") is entitled to judgment as a matter of law on Defendants' violations of the FLSA.

In addition to summary judgment on Defendants' violations of the FLSA, the undisputed facts establish that the Secretary also is entitled to summary judgment on: (1) the amount of overtime back wages Defendants owe their employees, which totals $130,018.33; (2) the amount of tips Defendants owe their employees, which totals $29,880.98; (3) Defendants' liability for

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Secretary of Labor Martin J. Walsh is automatically substituted as the proper Plaintiff in this case. For ease of reference, the Secretary and his pertinent predecessors will be referred to herein as the "Secretary."

$159,899.31 in liquidated damages, which is an amount equal to the overtime back wages and tips due; (4) the willful nature of Defendants' violations of the FLSA; and (5) Defendant Neampong's liability for $25,000.00 in punitive damages based on Neampong's retaliatory conduct. In addition, the Secretary respectfully requests that the Court enter a permanent injunction restraining Defendants from violating the FLSA in the future.

## FACTUAL BACKGROUND

I.    <u>The Secretary's Wage and Hour Investigation of Defendants</u>

The Wage and Hour Division of the United States Department of Labor (the "Wage and Hour Division") conducted an FLSA investigation of Defendants, which focused on the period from November 12, 2016 to November 9, 2019 (the "Investigation Period"). Sec'y's Rule 56.1 Statement of Undisputed Material Facts ("SUMF") ¶ 17. In conducting the investigation, the Wage and Hour Division gathered facts and documents. SUMF ¶ 18.

II.   <u>Defendants' Pay Practices</u>

Defendants paid their employees $100.00 or $110.00 for a full-day shift of more than 10 hours and $60.00 for a shorter shift of 5.75 hours. SUMF ¶¶ 26–28, 31–34. Employees worked for the entirety of their shifts. SUMF ¶ 29. Certain of Defendants' employees at issue in this case regularly worked more than 40 hours per workweek, SUMF ¶¶ 24, 30, and Defendants admitted that they did not pay any overtime premium for hours employees worked over 40 in a workweek, SUMF ¶ 25.

III.  <u>Back Wages Defendants Owe to Their Employees</u>

The Wage and Hour Division calculated that Defendants owe 12 employees a total of $130,018.33 in overtime back wages and an equal amount in liquidated damages, for a total of $260,036.66. SUMF ¶¶ 36, 44. During the Investigation Period, Defendants did not keep

accurate and adequate records of employees' work hours. SUMF ¶ 19. Therefore, for purposes of this motion, the Wage and Hour Division generally used Defendants' admissions in deposition testimony and documents provided to the Wage and Hour Division to determine the hours worked by employees. SUMF ¶ 38.

To calculate the overtime back wages Defendants owe their employees, the Wage and Hour Division performed calculations on a workweek-by-workweek basis. SUMF ¶ 37. With the exception of one employee, SUMF ¶ 39, the Wage and Hour Division divided the amount of compensation paid by Defendants to each employee for the workweek by the number of hours Defendants admitted each such employee worked per week to determine the employee's regular rate of pay for that workweek, SUMF ¶¶ 38, 41. If an employee's regular rate of pay fell below the legal minimum wage rate in effect at the time (the Massachusetts state minimum wage), the Wage and Hour Division used the state minimum wage as the employee's regular rate of pay. SUMF ¶ 41.

The Wage and Hour Division then multiplied one-half the regular rate of pay by the number of hours worked over 40 to obtain the half-time overtime premium owed to each employee for each workweek. SUMF ¶ 42. For employees whose rate of pay fell below the applicable regular rate in effect (the Massachusetts state minimum wage) during an overtime workweek, the Wage and Hour Division calculated back wages in an amount equal to the difference between the applicable regular rate in effect and the rate paid to the employee by multiplying that difference by the employee's total work hours. SUMF ¶ 43.

IV.   <u>Defendants' Tip Practices</u>

Defendants' front-of-the-house employees earned tips from customers during the Investigation Period. SUMF ¶ 45. However, Defendants admitted that they kept all of the tips employees earned from March 23, 2018 to the end of the Investigation Period. SUMF ¶ 47.

V.   <u>Tips Defendants Owe to Their Employees</u>

The Wage and Hour Division calculated that Defendants owe six employees a total of $29,880.98 in withheld tips and an equal amount in liquidated damages, for a total of $59,761.96. SUMF ¶¶ 48, 57. During the Investigation Period, Defendants did not keep records of the amount of tips received by each employee. SUMF ¶ 50.

To estimate the tips Defendants owe to their employees, the Wage and Hour Division used Defendants' own written reports of the total monthly tips Defendant Neampong kept. SUMF ¶¶ 49, 54–56. Defendant Neampong stated that she personally earned $300.00 to $400.00 per week in tips for her work as a server. SUMF ¶ 51. The Wage and Hour Division used $350.00, the midpoint of Defendant Neampong's stated range, and multiplied that amount by four weeks to estimate that Neampong received $1,400.00 per month in tips. SUMF ¶¶ 52–53. For the period of April 2018 onward, the Wage and Hour Division subtracted $1,400.00 from each month's total tips, as reported by Defendants, to allow Defendant Neampong to keep the tips she earned as a server. SUMF ¶ 54. The Wage and Hour Division divided the remaining tips for each month from April 2018 onward by the total number of hours worked by servers in the workweeks of that month to compute an hourly tip amount for each month. SUMF ¶ 55. The Wage and Hour Division then multiplied the particular month's hourly tip amount by the number of hours each server worked in a workweek of that month to estimate the amount of tips the server had received from customers in that workweek. SUMF ¶ 56.

VI.   Liquidated Damages and Willfulness

Defendants paid all employees in cash in each week, did not record those cash payments, and only maintained incomplete payroll records that exaggerated at least one employee's pay rate and underreported at least one employee's work hours. SUMF ¶¶ 58–62. Moreover, Defendants took no steps, prior to the Wage and Hour Division's investigation, to determine whether their pay or tip-keeping practices complied with the FLSA. SUMF ¶¶ 63–65.

VII.   Defendants' Failure to Maintain Required Records

As noted above, during the Investigation Period, Defendants failed to maintain true and accurate records of the hours their employees worked, SUMF ¶¶ 19–20, and failed to maintain true and accurate records of the wages employees actually received, SUMF ¶¶ 21–23.

VIII.   Defendants' Retaliation Against Their Employees

Certain of Defendants' employees cooperated or were about to cooperate with the Wage and Hour Division's investigation of Defendants, including by giving written statements or interviews. SUMF ¶¶ 66–67. Defendant Neampong admitted that she knew that employees were aware of the investigation and were communicating with the Wage and Hour Division's investigator. SUMF ¶¶ 69–70. Defendant Neampong admitted that, during the investigation, she asked certain servers to sign statements prepared by Neampong's accountant concerning the employees' pay rate and tips. SUMF ¶¶ 72–73. Those statements prepared by Defendant Neampong's accountant falsely suggested that Defendants paid the servers $12.00 per hour and falsely represented that servers did not receive tips. SUMF ¶¶ 74, 33–34, 45. Neampong provided these false statements to the Wage and Hour Division investigator during the investigation. SUMF ¶ 75.

## APPLICABLE STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Ellis v. Fidelity Mgmt. Trust Co.*, 883 F.3d 1, 7 (1st Cir. 2018). A fact is "material" if it has the potential to affect the outcome of a claim. *Anderson*, 477 U.S. at 248; *accord Estrada v. Rhode Island*, 594 F.3d 56, 62 (1st Cir. 2010). At the summary judgment stage, "the court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party." *Estrada*, 584 F.3d at 62.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat the motion, the non-moving party must set forth sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson*, 477 U.S.

## ARGUMENT[2]

I.   <u>The Secretary is Entitled to Summary Judgment on Defendants' Failure to Pay Employees the Required Overtime Premium</u>

There is no genuine dispute that Defendants failed to pay the required overtime premium to their employees during the Investigation Period. "The FLSA requires employers to compensate employees for each hour worked in excess of forty hours during a workweek 'at a rate not less than one and one-half times the regular rate at which [they are] employed.'" *Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 2 (1st Cir. 2016) (alteration in original) (footnote omitted) (quoting 29 U.S.C. § 207(a)(1)). "A claim for unpaid overtime wages must demonstrate that the [employees] were employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'" *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). To be held liable for unpaid overtime wages, an employer must have actual or constructive knowledge of the overtime work performed. *See id.* at 44.

Defendants admitted that certain employees routinely worked more than 40 hours in a workweek. SUMF ¶¶ 24, 30. Defendants also admitted that they did not pay their employees any overtime premium when those employees worked more than 40 hours in a workweek. SUMF ¶ 25. Accordingly, there can be no genuine dispute that Defendants knew their employees worked more than 40 hours in certain workweeks and failed to pay employees the FLSA's overtime premium of one and one-half times the employees' regular rate of pay for overtime hours worked. The Secretary is entitled to judgment as a matter of law on Defendants' violations

---

[2] Given that Defendants have admitted to jurisdiction, FLSA coverage, an employment relationship with the affected employees, and Defendant Neampong's status as an FLSA employer, there is no genuine dispute regarding those issues. The Court has jurisdiction pursuant to 29 U.S.C. § 217 and 28 U.S.C. § 1331. SUMF ¶ 1. Defendants are a covered enterprise under the FLSA. SUMF ¶¶ 12–15. Defendants employed the 13 employees at issue in this case. SUMF ¶ 11. And Defendant Neampong is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d). SUMF ¶¶ 6–10.

of Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1).

II.     The Secretary is Entitled to Summary Judgment on the Amount of Overtime Back Wages
        Defendants Owe Employees

        Where, as here, an employer has failed to maintain accurate and adequate records of the

hours employees have worked, the Secretary can establish "the amount and extent of that work

as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

680, 687 (1946), *superseded by statute on other grounds*, The Portal-to-Portal Act, 29 U.S.C.

§ 251 *et seq.*, *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36 (2014). In

this case, there is no genuine dispute that Defendants failed to maintain accurate and adequate

records of the hours their employees worked. SUMF ¶¶ 19–20. As a matter of law, the Secretary

has carried his burden to show that his computations of the overtime hours employees worked

and the related overtime back wages Defendants owe their employees are just and reasonable

because the Wage and Hour Division used Defendants' own statements about the hours and

schedules employees worked to perform the overtime back wage calculations in this case. SUMF

¶¶ 38–40. Accordingly, the Secretary is entitled to summary judgment on the amount of overtime

back wages Defendants owe their employees.

        "[I]t is the employer who has the duty under § 11(c) of the [FLSA] to keep proper records

of wages, hours and other conditions and practices of employment and who is in position to

know and to produce the most probative facts concerning the nature and amount of work

performed." *Mt. Clemens Pottery*, 328 U.S. at 687. "[W]here the employer's records are

inaccurate or inadequate and the employee cannot offer convincing substitutes . . . we hold that

an employee has carried out his burden if" the employee has not been properly compensated for

all hours worked and "he produces sufficient evidence to show the amount and extent of that

work as a matter of just and reasonable inference." *Id.*; *accord Tyson Foods, Inc. v. Bouaphakeo*,

577 U.S. 442, 456 (2016); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991). Were the rule that an employee or the Secretary could not recover back wages because they could not "prove the precise extent of uncompensated work," such a rule "would place a premium on an employer's failure to keep proper records in conformity with his statutory duty." *Mt. Clemens Pottery*, 328 U.S. at 687. The Secretary's initial burden under this *Mt. Clemens Pottery* framework "is a minimal one." *DeSisto*, 929 F.2d at 792.

Once the Secretary has produced sufficient evidence to show the amount and extent of the improperly compensated work as a matter of just and reasonable inference, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the [Secretary's] evidence." *Mt. Clemens Pottery*, 328 U.S. at 687–88; *accord Tyson*, 577 U.S. at 456; *DeSisto*, 929 F.2d at 792. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 688. Because Defendants bear this burden, at the summary judgment stage they must "demonstrate that a trier of fact could reasonably resolve that issue in [their] favor." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010). As another court in this judicial district has recently recognized in a similar case, "mere assertion[s]" by a defendant are neither evidence of the precise amount of work performed by employees nor sufficient to negate the reasonableness of the inference to be drawn from the Secretary's evidence. *Scalia v. Beleco, Inc.*, No. 20-cv-10044-DJC, 2021 WL 3036876, at *6 (D. Mass. July 19, 2021) (Casper, J.).

As noted above, Defendants did not maintain adequate and accurate records of the hours their employees worked, SUMF ¶¶ 19–20, or adequate and accurate records of the compensation employees received, SUMF ¶¶ 21–23, 61. Thus, to determine the overtime hours worked in this

case, the Wage and Hour Division used Defendants' deposition testimony concerning the daily hours and weekly schedules that employees worked, along with records of cash payments that Defendants had created during the investigation and provided to the Wage and Hour Division. SUMF ¶ 38.[3] To determine the total compensation employees received for their work, the Wage and Hour Division used Defendants' testimony concerning shift pay rates and the typical number of weekly shifts each employee worked, in addition to the records of cash payments that Defendants had made during the investigation. SUMF ¶ 40. As the calculations were based on Defendants' own statements and records, Defendants cannot credibly argue that the Secretary's reconstructions of hours worked and overtime back wages are unreasonable.[4]

The Wage and Hour Division performed the back wages calculations in this case on a workweek-by-workweek basis. SUMF ¶ 37; 29 C.F.R. § 778.104 ("The [FLSA] takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks."). With the exception of one employee, SUMF ¶ 39, the Wage and Hour Division divided the amount of compensation paid by Defendants to each employee for the workweek by the number of hours Defendants admitted each such employee worked per week to determine the employee's regular

---

[3] With respect to one employee, Worawut Jala, the information the Wage and Hour Division investigator learned during the course of the investigation about Jala's week-to-week schedule differed substantially from the work schedule Defendant Neampong recalled during her deposition. For this reason, the Wage and Hour Division used both the information concerning Jala's schedule that the investigator had gathered during the investigation and Defendants' testimony concerning the number of hours per day employees worked to reconstruct Jala's hours worked. SUMF ¶ 39.

[4] Any periods of the day in which the restaurant's business was slower must be counted as work time, as, during those periods, Defendants still expected employees to perform their job duties when customers placed orders. *See* SUMF ¶ 29; 29 C.F.R. § 785.15 (time is compensable when an employee is "engaged to wait" and an employee is unable to use waiting time "effectively for [their] own purposes"); 29 C.F.R. § 785.17 ("An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'"); *Harris v. City of Bos.*, 253 F. Supp. 2d 136, 144 (D. Mass. 2003) (Collings, M.J.) (finding that proper test for alleged meal break periods under 29 C.F.R. § 785.19(a) was "to determine whether the restrictions imposed on the employee during the meal period are predominantly for the employer's benefit"). Waiting time is still work time even in circumstances where an employee is allowed to leave the employer's premises for periods of short duration. 29 C.F.R. § 785.15.

rate of pay for that workweek, SUMF ¶¶ 38, 41; 29 C.F.R. § 778.109 ("The regular hourly rate
of pay of an employee is determined by dividing his total remuneration for employment (except
statutory exclusions) in any workweek by the total number of hours actually worked by him in
that workweek for which such compensation was paid."); *accord id.* § 778.112. In certain
circumstances, the Wage and Hour Division used the Massachusetts state minimum wage in
effect at the time as an employee's regular rate of pay, which is consistent with the Wage and
Hour Division's practices and the governing regulation. SUMF ¶ 41; 29 C.F.R. § 778.5 ("Where
a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an
employee by virtue of such other legislation, . . . the regular rate of the employee . . . cannot be
lower than such applicable minimum, for the words 'regular rate at which he is employed' as
used in section 7 must be construed to mean the regular rate at which he is lawfully employed.").

The Wage and Hour Division then multiplied one-half the regular rate of pay by the
number of hours worked over 40 to obtain the half-time overtime premium owed to each
employee for each workweek. SUMF ¶ 42; 29 C.F.R. §§ 778.107, 778.112. Also consistent with
the Wage and Hour Division's practices and the governing regulation, for employees whose rate
of pay fell below the applicable regular rate in effect (the Massachusetts state minimum wage)
during an overtime workweek, the Wage and Hour Division calculated back wages in an amount
equal to the difference between the applicable regular rate in effect and the lower rate paid to the
employee by multiplying that difference by the employee's total work hours. SUMF ¶ 43; 29
C.F.R. § 778.5.

Given the Wage and Hour Division's use of this methodology that is based on the hours
Defendants admitted their employees worked, there can be no genuine dispute that Defendants
cannot carry their burden under the *Mt. Clemens Pottery* framework. Accordingly, summary

11

judgment is warranted on the amount of overtime back wages Defendants owe the employees in this case—$130,018.33. *See Beleco, Inc.*, 2021 WL 3036876, at *6–7 (granting summary judgment to the Secretary on overtime back wages under *Mt. Clemens Pottery*); *O'Brien v. Town of Agawam*, 482 F. Supp. 2d 115, 118–20 (D. Mass. 2007) (Ponsor, J.) (allowing employees to recover FLSA damages on summary judgment under the *Mt. Clemens Pottery* framework); *see also Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 366 (6th Cir. 2019) (affirming grant of summary judgment to the Secretary on the amount of back wages due under the *Mt. Clemens Pottery* framework); *Scalia v. Shalimar Distributors LLC*, No. 4:18-CV-01642, 2020 WL 4335020, at *6 (M.D. Pa. July 28, 2020) (granting summary judgment to the Secretary on FLSA damages computations under the *Mt. Clemens Pottery* framework).

III.   <u>The Secretary is Entitled to Summary Judgment on Defendants' Violations of the FLSA's Tip-keeping Provisions</u>

As amended by the Consolidated Appropriations Act of 2018, effective March 23, 2018, Section 3(m)(2)(B) of the FLSA prohibits an employer from "keep[ing] tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

When servers in this case received tips from customers, they were required to collect those tips and put them in a box in the restaurant. SUMF ¶¶ 45–46. Then, Defendants would keep the tips that employees placed in the box. SUMF ¶ 47. In fact, Defendants have admitted that they kept *all* of the tips that employees earned from March 23, 2018 through the rest of the Investigation Period. SUMF ¶ 47. There can be no genuine dispute as to Defendants' violations of Section 3(m)(2)(B) of the FLSA for the period from March 23, 2018 onward, and the Secretary is entitled to summary judgment on this issue.

IV.   <u>The Secretary is Entitled to Summary Judgment on the Amount of Tips Defendants Owe Front-of-the-House Employees</u>

Pursuant to Section 16 of the FLSA, the Secretary has authority to recover tips withheld by an employer on behalf of employees. *See* 29 U.S.C. § 216(c). Upon a finding of a violation of Section 3(m)(2)(B), "the employer shall be liable for the amount of . . . all such tips unlawfully kept by the employer." *Id.*

Defendants did not maintain records of the amount of tips received by each server during their work hours. SUMF ¶ 50. Where an employer fails to do so, under the logic of the *Mt. Clemens Pottery* decision, the Secretary should be allowed to estimate the amount of tips Defendants unlawfully kept from their employees. *See* 328 U.S. at 687. Any other rule perversely would reward employers who keep employees' tips and maintain no records of the tip amounts employees earned. *See id.* Under the *Mt. Clemens Pottery* framework, the Secretary need only show the amount of tips Defendants unlawfully kept from each employee "as a matter of just and reasonable inference." *Id.*

To estimate the tips Defendants owe to their employees, the Wage and Hour Division used Defendants' own written reports of the total monthly tips Defendant Neampong kept. SUMF ¶¶ 49, 54. Defendant Neampong stated that she personally earned $300.00 to $400.00 per week in tips for her work as a server. SUMF ¶ 51. The Wage and Hour Division used $350.00, the midpoint of Defendant Neampong's stated range, and multiplied that amount by four weeks to estimate that Defendant Neampong received $1,400.00 per month in tips. SUMF ¶¶ 52–53. For the period of April 2018 onward, the Wage and Hour Division subtracted $1,400.00 from each month's total tips, as reported by Defendants, to allow Defendant Neampong to keep the tips she earned as a server. SUMF ¶ 54. The Wage and Hour Division divided the remaining tips for each month from April 2018 onward by the total number of hours worked by servers in the

workweeks of that month to compute an hourly tip amount for each month. SUMF ¶ 55. The Wage and Hour Division then multiplied the particular month's hourly tip amount by the number of hours each server worked in a workweek of that month to estimate the amount of tips the server would have received from customers in that workweek. SUMF ¶ 56.

Applying the burden-shifting framework of *Mt. Clemens Pottery* to the tip-keeping context, there is no genuine dispute that the Secretary has carried his burden to prove as a matter of just and reasonable inference the amount of tips each employee is owed. Since the calculations of tips owed were based on Defendants' own admissions and records, Defendants cannot credibly negate the reasonableness of the Secretary's calculations, and summary judgment for the Secretary as to the amount of tips owed to the employees is appropriate. The total amount Defendants owe their employees in tips is $29,880.98. SUMF ¶ 48.

V.    The Secretary is Entitled to Summary Judgment on Defendants' Lack of a Good Faith Defense to Liquidated Damages

The FLSA authorizes the Secretary of Labor to recover on behalf of employees' unpaid wages, overtime compensation, and tips unlawfully kept by an employer, plus an equal amount in liquidated damages. *See* 29 U.S.C. § 216(c). "The only way an employer can escape liquidated damages is to 'show[] to the satisfaction of the court' that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA." *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 35 (1st Cir. 2007) (alteration in original) (quoting 29 U.S.C. § 260). "[I]t is the *employer's* burden to show good faith and objective reasonableness." *Id.* at 36 (emphasis in original). "The burden, under 29 U.S.C. § 260, is a difficult one to meet." *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks omitted); *accord Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 161 (D. Mass. 2007) (Stearns, J.). And the award of liquidated damages in an amount equal to back wages owed is

"the norm." *Hotel Oasis, Inc.*, 493 F.3d at 35.

To show good faith, an employer must establish that it took "active steps" to determine if its practices were in compliance with the FLSA and then moved to comply with the statute's requirements. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). For an employer's actions to constitute an "active step" capable of establishing a good faith defense to liquidated damages, an employer cannot just take a general action directed at compliance with the FLSA, but rather must take a specific step tailored to the particular nature of the FLSA violation at issue. *See id.* at 151; *S. New Eng. Telecomms.*, 121 F.3d at 72 (liquidated damages were proper even where employer sought an opinion letter from the Department of Labor but its inquiry was not sufficiently tailored to the issue in the case).

Prior to learning of the Wage and Hour Division's investigation, Defendants took no steps of any kind to determine whether their overtime and tip-keeping practices complied with the FLSA. SUMF ¶¶ 63–64. Defendants simply stated that they relied upon their tax preparer to keep them in compliance with the FLSA. SUMF ¶ 65. Defendants admitted that they did not consult with an attorney, an accountant, or any other person or even read materials published by the Secretary to learn about the FLSA's requirements. SUMF ¶¶ 63–64.

Based on these undisputed facts, no reasonable factfinder could conclude that Defendants have a good faith defense to liquidated damages under the FLSA. *See Beleco, Inc.*, 2021 WL 3036876, *8 (granting summary judgment for Secretary on liquidated damages where defendants did not "recall any attempts to comply with the FLSA" or "proffer any evidence of affirmative steps" to determine whether they were in compliance); *Scalia v. World Marble & Granite Corp.*, No. 19-cv-11211-ADB, 2021 WL 2481255, at *10 (D. Mass. June 17, 2021) (Burroughs, J.) (granting summary judgment for Secretary on liquidated damages where defendants "did not

consult with counsel or undertake any other efforts to determine how to comply with overtime regulations"); *Murphy*, 516 F. Supp. 2d at 161 (granting summary judgment for plaintiffs on liquidated damages where defendants "neither solicited an opinion from the DOL nor relied on the advice of counsel").

VI.    Defendants' FLSA Violations Were Willful

"The FLSA imposes a two-year statute of limitations unless the violations are shown to be willful, in which case a three-year period applies." *Reich v. Newspapers of New Eng., Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995) (citing 29 U.S.C. § 255(a)). An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *accord Hotel Oasis, Inc.*, 493 F.3d at 35; 29 C.F.R. § 578.3(c)(1).

The undisputed facts in this case further evidence Defendants' willfulness. As noted above, Defendants paid all employees in unrecorded cash payments each week, and then inflated pay rates on the payroll documents. SUMF ¶¶ 58–59, 61. In addition, for at least one employee who regularly worked more than 40 hours per week, Defendants underreported the employee's hours on their payroll documents. SUMF ¶ 62. These facts, which are based on Defendants' admissions and their own incomplete records, show that the Secretary is entitled to judgment as a matter of law on the willfulness of Defendants' violations of the FLSA's overtime and tip-keeping provisions. *See Hotel Oasis, Inc.*, 493 F.3d at 35 (determining that district court's willfulness findings were not clearly erroneous where defendants failed to keep accurate time records, paid employees "off the books," and manipulated the payroll records they did maintain).

Also, as noted above, the Defendants in this case have admitted that they took no steps to ascertain the requirements of the FLSA's overtime or tip-keeping provisions prior to the investigation, SUMF ¶¶ 63–65, which further supports the willful nature of Defendants'

violations. *See Beleco, Inc.*, 2021 WL 3036876, at *7; *World Marble & Granite Corp.*, 2021 WL 2481255, at *10 ("This failure to investigate the requirements of the FLSA demonstrates willfulness.").

VII.   The Secretary is Entitled to Summary Judgment on Defendants' Violations of the FLSA's Anti-Retaliation Provision and an Award of Punitive Damages

To prevail on an FLSA retaliation claim under Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), the Secretary must show that: (1) an employee engaged in statutorily protected activity; (2) the employer or its agent subjected that employee to an adverse action; and (3) that adverse action was because of the employee's protected activity. *See Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015); *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1996). The undisputed facts establish all three elements, and the Secretary therefore is entitled to judgment as a matter of law on his retaliation claim.

A.   *Employees' Protected Activity*

An employee who "has testified or is about to testify in any . . . proceeding" under the FLSA is expressly protected from retaliation because of that testimony. 29 U.S.C. § 215(a)(3). The scope of this clause protects employees who participate in an investigation by the Secretary or who have communicated or are about to communicate with the Secretary concerning the FLSA. *See Scalia v. F.W. Webb Co.*, No. 20-cv-11450-ADB, 2021 WL 1565508, at *4 (D. Mass. Apr. 21, 2021) (Burroughs, J.) (concluding that the Secretary plausibly alleged protected activity where the Secretary asserted that employees "had spoken or were about to speak to" investigators during an FLSA investigation); *see also Miller v. Metro Ford Auto. Sales, Inc.*, 519 F. App'x 850, 851 (5th Cir. 2013) (per curiam) (unpublished) ("The ADEA and FLSA prohibit employers from discriminating against any employee for . . . participating in investigations or other proceedings."); *Scalia v. Unforgettable Coatings, Inc.*, 455 F. Supp. 3d 987, 991 (D. Nev.

2020) ("The FLSA expressly prohibits retaliation against any employee for cooperating with an investigation under the FLSA.").

Here, certain employees participated or were about to participate in the Wage and Hour Division's investigation of Defendants under the FLSA. SUMF ¶ 66. Some employees provided information to the Wage and Hour Division through written statements or interviews. SUMF ¶ 67. These undisputed facts establish that employees engaged in conduct that undoubtedly is protected under the FLSA. *See F.W. Webb*, 2021 WL 1565508, at *4.

### B.    Defendant Neampong's Adverse Actions

An adverse action is one that well might dissuade a reasonable worker from making or supporting a charge of an FLSA violation. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (decided in the context of Title VII); *F.W. Webb Co.*, 2021 WL 1565508, at *4 (applying *Burlington Northern* adverse action standard in FLSA retaliation case).[5] That is to say, the "challenged action" must be "materially adverse," *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, as judged by a case-by-case inquiry "cast in objective terms," *Blackie*, 75 F.3d at 725.

---

[5] While *Burlington Northern* is a case interpreting Title VII, Judge Burroughs recently decided that the *Burlington Northern* standard for adverse action also is applicable to retaliation claims under Section 15(a)(3) of the FLSA. *See F.W. Webb Co.*, 2021 WL 1565508, at *4. The *F.W. Webb* case is the key decision on this question in this jurisdiction, as the First Circuit has not had occasion to consider the adverse action standard in an FLSA case since the Supreme Court decided *Burlington Northern* in 2006. *See Travers*, 808 F.3d at 531 (no dispute that employer engaged in adverse action); *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 430–31 (1st Cir. 2010) (affirming dismissal of Section 15(a)(3) claim based on failure to allege any protected activity and not analyzing adverse action under the FLSA). Six other United States Courts of Appeal have expressly relied on the adverse action standard from *Burlington Northern* in Section 15(a)(3) cases. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 648 (11th Cir. 2019); *McBurnie v. City of Prescott*, 511 F. App'x 624, 625 (9th Cir. 2013) (unpublished); *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 531–32 (6th Cir. 2011) (unpublished); *Noack v. YMCA of Greater Houston Area*, 418 F. App'x 347, 353 (5th Cir. 2011) (unpublished); *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008). Moreover, the First Circuit has stated that Title VII decisions should guide the interpretation of analogous provisions of the FLSA. *See Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII . . . and [the] FLSA as standing *in pari passu* and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another."). This clear instruction from the First Circuit in part guided Judge Burroughs's decision in *F.W. Webb*. *See* 2021 WL 1565508, at *4.

There can be no dispute that Defendant Neampong took adverse action against employees. Defendant Neampong admitted that during the investigation she asked certain servers to sign documents prepared by her accountant, which falsely stated the servers did not receive any tips and suggested that Defendants paid the servers $12.00 per hour. SUMF ¶¶ 72–74. Defendants then provided the false statements to the investigator. SUMF ¶ 75. In reality, servers were paid $100.00 per full day of either 10.25 or 10.5 hours, SUMF ¶¶ 26–27, 33, and $60.00 for a shorter shift of 5.75 hours, SUMF ¶¶ 28, 34, which, when converted to hourly rates, are much lower than $12.00 per hour. Moreover, servers did receive tips from customers, though Defendants kept all of the tips earned by employees. SUMF ¶¶ 45, 47. An employer's attempts to convince employees to provide false information in a retrospective declaration during an FLSA investigation well might dissuade reasonable workers from asserting their rights to the back wages and tips they are owed or otherwise participating in the investigation. *See Acosta v. Austin Elec. Servs. LLC*, 322 F. Supp. 3d 951, 962 (D. Ariz. 2018) (granting preliminary injunction where defendants obtained "retroactive declarations, under coercive circumstances and during a pending Department of Labor investigation into Defendants' payment practices"); *Acosta v. Sw. Fuel Mgmt., Inc.*, No. CV 16-4547, 2018 WL 739425, at *4 n.3 (C.D. Cal. Feb. 2, 2018) (noting that an employee may be deterred from participating in an investigation if "she believes that the coerced declaration can subsequently be used against her to claim (albeit mistakenly) that the employee perjured herself"), *vacated on other grounds by* 2018 WL 2207997 (C.D. Cal. Feb. 20, 2018).

Defendant Neampong also engaged in adverse action when she asked one employee if that employee had spoken to the Wage and Hour Division's investigator. SUMF ¶ 71. An employer's inquiries concerning employees' participation in an ongoing FLSA investigation

constitute adverse actions. *See F.W. Webb*, 2021 WL 1565508, at *5 (finding that Secretary plausibly alleged an adverse action where employer sent emails to employees, which asked whether those employees had been contacted by the Secretary).

   C.   *There is a Causal Connection Between the Employees' Protected Activity and Defendant Neampong's Adverse Actions*

Finally, the Secretary "must proffer evidence from which a reasonable factfinder could infer that the employer retaliated against [the employee] for engaging in the protected activity." *Blackie*, 75 F.3d at 723. The precise standard of causation governing an FLSA retaliation claim in the First Circuit is not clear. In 2002, the First Circuit applied a "but-for" standard of causation in a Section 15(a)(3) case. *See Kearney v. Town of Wareham*, 316 F.3d 18, 23–24 (1st Cir. 2002). However, years later in 2015, the First Circuit stated that it "need not decide the precise standard of causation that a plaintiff must meet to prove unlawful retaliation" under Section 15(a)(3) of the FLSA, as the parties apparently agreed that the "but-for" causation standard applied. *Travers*, 808 F.3d at 531. Assuming, without conceding, that the "but-for" standard of causation governs a Section 15(a)(3) claim, the undisputed facts satisfy that standard here.

Defendant Neampong's own admissions show that she asked employees to sign the statements concerning their wages and tips because of their potential involvement in the investigation. First, Defendant Neampong admitted that she was aware that some employees were engaged in the protected activity of communicating with the Wage and Hour Division investigator. SUMF ¶ 70. Second, Defendant Neampong has said that she asked her accountant to prepare the statements during the investigation to reflect Defendants' position that the servers previously had "agreed" to accept a daily pay rate, rather than their earned tips. SUMF ¶ 73.[6]

---

   [6] It is not material whether employees agreed to accept a daily pay rate with no overtime premium or allow their employer to keep their tips, as any such agreement cannot relieve Defendants of their obligation to properly

After they were signed, Defendants provided the statements to the investigator. SUMF ¶ 75. Thus, but for the possibility that the servers might disclose the truth to the Wage and Hour Division in its ongoing investigation—that they were paid much less than $12.00 per hour and their earned tips were taken from them—Defendant Neampong would not have asked the servers to sign the false statements.

****

As the facts underlying the retaliation claim are based on Defendant Neampong's own admissions, there can be no genuine dispute as to any material fact, and judgment as a matter of law on the Section 15(a)(3) claim is appropriate.

### D.    Punitive Damages

Section 16(b) of the FLSA states that any employer who unlawfully retaliates against an employee "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of" the anti-retaliation provision. 29 U.S.C. § 216(b). Although the First Circuit has not addressed the issue, other courts have held that punitive damages may be awarded for violations of Section 15(a)(3) of the FLSA. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 111–12 (7th Cir. 1990) (recognizing that "legal . . . relief" is a "term commonly understood to include compensatory and punitive damages" and affirming jury award of $45,500 in punitive damages); Default J. Against Def. JKA Constr., Inc., *Scalia v. JKA Constr., Inc.*, No. 20-cv-11944-RGS, Dkt. 44 (D. Mass. June 29, 2021) (Stearns, J.) (awarding $70,000 in punitive damages against one defendant for Section 15(a)(3) claim in default judgment); Default J. Against Def. Mendes Candido Framers Corp., *Scalia v. JKA Constr., Inc.*, No. 20-cv-11944-

---

pay employees under the FLSA and follow the statute's provisions concerning tips. The Supreme Court stated long ago that the FLSA's provisions are mandatory and not subject to negotiation between employers and employees. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act.").

RGS, Dkt. 32 (D. Mass. Apr. 13, 2021) (awarding $30,000 in punitive damages against additional defendant); *Marrow v. Allstate Sec. & Investigative Servs., Inc.*, 167 F. Supp. 2d 838, 843 (E.D. Pa. 2001) (reasoning that deterrent effect of punitive damages would serve purposes of Section 15(a)(3)); *but see Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000).[7]

While it is not entirely clear what standard the First Circuit would use to determine whether punitive damages are appropriate in a particular FLSA retaliation case, the court would likely turn to its Title VII jurisprudence for guidance. *See Serapion*, 119 F.3d at 985 (endorsing the practice of treating Title VII decisions as "instructive" in FLSA decisions). Punitive damages are available in the Title VII context where an employer engages in intentional discrimination "with malice or with reckless indifference to [an employee's] federally protected rights." 42 U.S.C. § 1981a(b)(1). The Supreme Court has interpreted the malice or reckless indifference standard to mean that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Since *Kolstad*, the First Circuit has said that when an employer intentionally retaliates against an employee because that employee engaged in conduct protected by federal statute, a factfinder could "fairly infer that the employer harbored malice or reckless

---

[7] The First Circuit's decision in *Reich v. Cambridgeport Air Systems, Inc.*, suggests that the First Circuit would agree that punitive damages are available for FLSA retaliation claims. *See* 26 F.3d 1187, 1192 (1st Cir. 1994) (citing *Travis* for the proposition that "[r]etaliatory discharge has been treated as an intentional tort"); *see also Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 41 (1st Cir. 2003) ("[A]cts of intentional discrimination are just the sort of conduct that punitive damages are aimed to deter." (citation omitted)). In *Cambridgeport Air Systems*, the First Circuit reviewed the trial court's decision to award "double damages" for retaliatory discharge under Section 11(c) of the Occupational Safety and Health Act of 1970 (the "OSH Act"), 29 U.S.C. § 660(c). *See* 26 F.3d at 1190. The OSH Act allows the district courts to "order all appropriate relief" in cases of retaliation or discrimination. 29 U.S.C. § 660(c)(2). In interpreting that language in the OSH Act, the First Circuit held that "all appropriate relief" included "traditional" forms of relief, including exemplary or punitive damages. *Cambridgeport Air Sys.*, 26 F.3d at 1194. Since the language of "legal or equitable relief" in Section 16(b) of the FLSA, 29 U.S.C. § 216(b), is even more specific than the OSH Act text interpreted in *Cambridgeport Air Systems*, the First Circuit would likely conclude that punitive damages are available legal relief for violations of Section 15(a)(3) of the FLSA.

indifference towards those . . . rights." *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 41–42 (1st Cir. 2003) (decided in Title VII context).

Defendant Neampong's admissions show that the purpose of the false statements was to try to convince the Wage and Hour Division that employees had agreed to surrender the tips to which they were entitled under the FLSA and that they were being paid a higher wage in exchange. SUMF ¶¶ 72–75. The statements were an attempt to dissuade employees from exercising their statutory right to speak freely and honestly with the Wage and Hour Division, and, in essence, also sought to demonstrate employees' "waiver" of their FLSA rights, which the Supreme Court stated long ago employers and employees cannot agree to do. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). In obtaining the false statements from employees Defendant Neampong exhibited reckless indifference towards those employees' FLSA rights. Based on the undisputed facts, punitive damages of $25,000.00 are appropriate here.[8]

## VIII.   The Secretary is Entitled to Summary Judgment on Defendants' Failure to Maintain Required Records

Under the FLSA, Defendants are required to make and preserve records of "[h]ours worked each workday and total hours worked each workweek" by their employees, 29 C.F.R. § 516.2(a)(7), as well as the total wages paid each pay period, *id.* § 516.2(a)(11). Defendants have admitted that, during the Investigation Period, they did not maintain records of the hours

---

[8] The amount of punitive damages sought by the Secretary is reasonable under the three guideposts in *BMW of North America, Inc. v. Gore*—namely, (1) "the degree of reprehensibility;" (2) "the disparity between the harm or potential harm suffered" and the "punitive damages award;" and (3) the difference between the punitive damages award "and the civil penalties authorized or imposed in comparable cases." 517 U.S. 559, 575 (1996); *see also* Consent J. & Order, *Walsh v. Capone Bros., Inc.*, No. 21-cv-10585-FDS, Dkt. 37 (D. Mass. Oct. 12, 2021) (Saylor, C.J.) (awarding $75,000 in punitive damages on Section 15(a)(3) claim in consent judgment); *JKA Constr., Inc.*, No. 20-cv-11944-RGS, Dkt. 44, Dkt. 32 (awarding total of $100,000 in punitive damages on Section 15(a)(3) claim). Defendant Neampong's actions exhibited indicia of reprehensibility, as she used false written statements for the purpose of dissuading financially vulnerable employees from asserting their rights to their wages and tips. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (listing factors to consider when determining reprehensibility). Moreover, the punitive damages award sought totals less than 8% of the $319,798.62 in back wages, tips, and liquidated damages that Defendants owe to employees. *See Gore*, 517 U.S. at 580 (stating that punitive damages must have a "reasonable relationship" to compensatory damages).

worked by their employees. SUMF ¶¶ 19–20. Defendants also have admitted that they paid all employees in cash weekly during the Investigation Period, but did not keep complete and accurate records of those cash payments. SUMF ¶¶ 22–23. The undisputed facts demonstrate that Defendants failed to keep records required by the FLSA, and summary judgment for the Secretary is therefore appropriate.

IX.    Injunctive Relief is Warranted

The Court should enjoin Defendants from future violations of the overtime, recordkeeping, and anti-retaliation provisions of the statute. *See* 29 U.S.C. § 217. The Court has discretion with respect to the issuance of such an injunction. *See Newspapers of New Eng., Inc.*, 44 F.3d at 1081. "In exercising its discretion, the district court should weigh the finding of the violation established . . . against the factors that indicate the violations are not likely to recur, such as intent to comply, extraordinary efforts to prevent recurrence, absence of repetitive violations, and absence of bad faith." *Id.* (internal quotation marks omitted).

The undisputed facts are that Defendants made no efforts to determine whether their overtime pay practices complied with the FLSA. SUMF ¶ 64. In addition, Defendants' deficient payroll records show manipulated pay rates and excluded overtime hours. SUMF ¶¶ 21, 61–62. Most significantly, after failing to pay their employees the proper overtime premium and unlawfully keeping the tips their employees had earned, Defendants then took actions, including having employees sign false statements about their wages and tips, which would dissuade a reasonable worker from coming forward to tell the Wage and Hour Division the truth. SUMF ¶¶ 72–75. These facts fall far short of establishing an absence of bad faith or Defendants' sincere efforts to comply with the FLSA. A permanent injunction is therefore appropriate.

## CONCLUSION

In view of the foregoing, the Court should grant the Secretary summary judgment on all issues in this case: (1) Defendants' violations of the overtime provisions of the FLSA; (2) the amount of back wages Defendants owe their employees for those overtime violations, which totals $130,018.33; (3) Defendants' violations of the tip-keeping provision of the FLSA; (4) the amount of tips Defendants owe their employees for those tip-keeping violations, which totals $29,880.98; (5) Defendants' liability for $159,899.31 in liquidated damages, which is an amount equal to the overtime back wages and tips due; (6) the willful nature of Defendants' violations of the FLSA; (7) Defendant Neampong's violation of the anti-retaliation provision of the FLSA; (8) Defendant Neampong's liability for $25,000.00 in punitive damages for the unlawful retaliation against employees; and (9) Defendants' FLSA recordkeeping violations. In addition, the Court should enjoin Defendants from violating the FLSA in the future.

Post Office Address:

U.S. Department of Labor
Office of the Solicitor
John F. Kennedy Federal Building
Room E-375
Boston, MA 02203
TEL: (617) 565-2500
FAX: (617) 565-2142


Date: December 10, 2021

Seema Nanda
Solicitor of Labor

Maia S. Fisher
Regional Solicitor

Mark A. Pedulla
Wage and Hour Counsel

/s/ Emily V. Wilkinson
Emily V. Wilkinson
Trial Attorney
wilkinson.emily.v@dol.gov
MA BBO No. 699512

U.S. Department of Labor
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

 I hereby certify that this document, filed through the CM/ECF system on December 10, 2021, shall be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

<u>/s/ Emily V. Wilkinson</u>
Emily V. Wilkinson