UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor,[1] <br><br> Plaintiff, <br><br> v. <br><br> SWEET LEMON, INC. d/b/a SWEET LEMONS THAI RESTAURANT, and PORNTHIP NEAMPONG, <br><br> Defendants. | Civil Action No. 1:20-cv-12217-RGS |

### SECRETARY OF LABOR'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

**Jurisdiction**

1.  This Court has jurisdiction over this action pursuant to 29 U.S.C. § 217 and 28 U.S.C. §§ 1331 and 1345. Answer (Dkt. 7) ¶ 1.

**The Defendants and Individual Employer Status**

2.  Defendant Sweet Lemon, Inc. d/b/a Sweet Lemons Thai Restaurant ("Sweet Lemon") at all relevant times was a corporation that operated as a full-service restaurant at 828 Washington Street, Weymouth, Massachusetts 02189, within this Court's jurisdiction. Answer (Dkt. 7) ¶ 4.

3.  At all relevant times, Sweet Lemon employed employees, including those who worked as cooks, dishwashers, and servers. Answer (Dkt. 7) ¶ 5.

4.  At all relevant times, Sweet Lemon set its employees' method and amount of pay, created policies for employee compensation, and maintained some employment-related records. Answer (Dkt. 7) ¶ 6.

5.  At all relevant times, Sweet Lemon set the hours worked by its employees, supervised employees' work, and had the power to hire and fire them. Answer (Dkt. 7) ¶ 7.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Secretary of Labor Martin J. Walsh is automatically substituted as the proper Plaintiff in this case. For ease of reference, the Secretary and his pertinent predecessors will be referred to herein as the "Secretary."

1

6.  Defendant Pornthip Neampong ("Neampong") at all relevant times was an owner, officer, and director of Sweet Lemon. Answer (Dkt. 7) ¶ 8.

7.  At all relevant times, Defendant Neampong actively managed and directed the day-to-day operations of Sweet Lemon. Answer (Dkt. 7) ¶ 9.

8.  Defendant Neampong made all business decisions related to Sweet Lemon's operations, set employees' rates of pay and the method by which employees were paid, determined when and how long employees worked, and maintained some employment-related records. Answer (Dkt. 7) ¶ 10.

9.  Defendant Neampong's decisions and actions related to pay practices have affected the compensation received by Sweet Lemon's employees. Answer (Dkt. 7) ¶ 11.

10.  Defendant Neampong has acted directly and indirectly in the interest of Sweet Lemon in relation to its employees, and therefore is and has been an employer of Sweet Lemon's employees within the meaning of the FLSA, *see* 29 U.S.C. § 203(d). Answer (Dkt. 7) ¶ 12.

11.  Defendants employed the 13 employees who are at issue in this case. Answer (Dkt. 7) ¶ 14; Oct. 26, 2021 Deposition of Pornthip Neampong (Ex. 1 to the Declaration of Emily V. Wilkinson ("Wilkinson Decl.")) ("Neampong Dep.") at 28:1–34:20.

## Enterprise Coverage Under the FLSA

12.  Defendants at all relevant times were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as they engaged in related activities performed through unified operation or common control for a common business purpose. Answer (Dkt. 7) ¶ 13.

13.  At all relevant times, Defendants employed employees in said enterprise. Answer (Dkt. 7) ¶ 14.

14.  Defendants' enterprise is engaged in commerce or in the production of goods for commerce, which includes having employees handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce. Answer (Dkt. 7) ¶ 15.

15.  At all relevant times, Defendants' enterprise had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated). Answer (Dkt. 7) ¶ 16.

16.  Defendants' employees have therefore been employed in this enterprise engaged in commerce or in the production of goods for commerce, within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s). Answer (Dkt. 7) ¶ 17.

## Wage and Hour Investigation

17.  The Wage and Hour Division of the United States Department of Labor (the "Wage and Hour Division") investigated Defendants and their compliance with the FLSA for the period from November 12, 2016 to November 9, 2019 (the "Investigation Period"). Declaration of Kimberly Erickson ("Erickson Decl.") ¶¶ 5–6.

18.  During the investigation of Defendants, the Wage and Hour Division gathered facts and documents. Erickson Decl. ¶ 7.

### Recordkeeping Violations—29 U.S.C. § 211

19. During the Investigation Period, Defendants failed to maintain true and accurate records of the number of hours that employees worked in each workweek. Defs.' Answers to Sec'y's First Set of Requests for Admission (Ex. 2 to Wilkinson Decl.) ("RFA Resp.") No. 10; Aug. 27, 2021 Deposition of Sweet Lemon, Inc. (Ex. 3 to Wilkinson Decl.) ("Sweet Lemon Dep.") at 37:19–38:1.

20. During the Investigation Period, Defendants failed to keep true and accurate records of the number of hours the employees at issue in this case worked in excess of 40 hours in a workweek. RFA Resp. No. 11 (Ex. 2 to Wilkinson Decl.).

21. The incomplete payroll records that Defendants did maintain failed to accurately document the wages that employees actually received. Aug. 27, 2021 Sweet Lemon Dep. at 63:13–64:6 (Ex. 3 to Wilkinson Decl.); Erickson Decl. ¶¶ 11–12; Ex. 1 to Erickson Decl.

22. Defendants paid all employees in cash each week. Aug. 27, 2021 Sweet Lemon Dep. at 39:13–19, 47:12–14 (Ex. 3 to Wilkinson Decl.).

23. During the Investigation Period, Defendants failed to keep true and accurate records of the cash payments made to certain employees. Defs.' Answers to Sec'y's First Set of Interrogatories (Ex. 4 to Wilkinson Decl.) ("Interrogatory Resp.") No. 7; Aug. 27, 2021 Sweet Lemon Dep. at 61:14–62:3 (Ex. 3 to Wilkinson Decl.).

### Overtime Violations and Back Wage Computations—29 U.S.C. § 207

24. During the Investigation Period, certain of Defendants' employees routinely worked more than 40 hours in a workweek. RFA Resp. Nos. 3, 4, 5, 6 (Ex. 2 to Wilkinson Decl.).

25. During the Investigation Period, Defendants did not pay employees an overtime premium for hours worked over 40 in a workweek. RFA Resp. No. 8 (Ex. 2 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 47:12–19 (Ex. 3 to Wilkinson Decl.).

26. During the Investigation Period, front-of-the-house and back-of-the-house employees worked from 11:15 a.m. to 9:45 p.m. on Mondays through Fridays. Oct. 26, 2021 Neampong Dep. at 25:9–26:3 (Ex. 1 to Wilkinson Decl.).

27. During the Investigation Period, front-of-the-house and back-of-the-house employees worked from 11:30 a.m. to 9:45 p.m. on Saturdays and Sundays. Oct. 26, 2021 Neampong Dep. at 26:4–8, 25:9–14 (Ex. 1 to Wilkinson Decl.).

28. During the Investigation Period, certain front-of-the-house employees worked shorter shifts from 4:00 p.m. to 9:45 p.m. Oct. 26, 2021 Neampong Dep. at 26:12–27:18 (Ex. 1 to Wilkinson Decl.).

29. Employees worked for the entirety of their shifts. Oct. 26, 2021 Neampong Dep. at 25:12–14 (Ex. 1 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 50:17–25 (Ex. 3 to Wilkinson Decl.); Erickson Decl. ¶ 10.

30. During the Investigation Period, the following employees routinely worked shifts totaling more than 40 hours per workweek:

- Fredy Ramon Fuentes Alvarez—six full-day shifts per workweek
- Marco Luna Arias—five full-day shifts per workweek
- Warangtip Asci—five full-day shifts per workweek
- Suchitra Chonglakmani—five full-day shifts per workweek
- Charin Jiraratwattana—five to six full-day shifts per workweek
- Hue Lam—five full-day shifts per workweek
- Busada Samransook—five full-day shifts per workweek
- Thita Sirisobhana—five full-day shifts per workweek
- Wiyada Srisuwanporn—five full-day shifts per workweek
- Nutcha Wongwutthiphat—four full-day shifts and one short shift per workweek
- Settawut Wongwutthiphat—five to six full-day shifts per workweek

Oct. 26, 2021 Neampong Dep. at 28:3–30:9, 30:19–31:22, 32:9–34:20 (Ex. 1 to Wilkinson Decl.).

31. In November 2016, Defendants paid back-of-the-house employees $100.00 per day. Aug. 27, 2021 Sweet Lemon Dep. at 39:1–5 (Ex. 3 to Wilkinson Decl.).

32. Later in the Investigation Period, Defendants paid back-of-the-house employees $110.00 per day. Aug. 27, 2021 Sweet Lemon Dep. at 39:1–12 (Ex. 3 to Wilkinson Decl.).

33. Throughout the Investigation Period, Defendants paid front-of-the-house employees $100.00 per day when they worked a full day. Oct. 26, 2021 Neampong Dep. at 35:5–17 (Ex. 1 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 38:23–25 (Ex. 3 to Wilkinson Decl.).

34. Defendants paid front-of-the-house employees $60.00 per day when they worked a shorter shift from 4:00 p.m. to 9:45 p.m. Oct. 26, 2021 Neampong Dep. at 35:18–20 (Ex. 1 to Wilkinson Decl.).

35. Defendants provided the Wage and Hour Division with handwritten documents concerning cash payments made to certain employees and the number of days each week those employees worked, which had been created by Defendants during the investigation. Erickson Decl. ¶ 13; Ex. 2 to Erickson Decl.; Aug. 27, 2021 Sweet Lemon Dep. at 61:6–62:3 (Ex. 3 to Wilkinson Decl.).

36. The Wage and Hour Division calculated that Defendants owe their employees a total of $130,018.33 in overtime back wages and an equal amount in liquidated damages, for a total of $260,036.66. Erickson Decl. ¶ 16; Ex. 5 to Erickson Decl.

37. To calculate the overtime back wages, the Wage and Hour Division performed calculations on a workweek-by-workweek basis. Erickson Decl. ¶ 17.

38. Since Defendants did not maintain records of the hours employees worked, to determine the hours worked by Defendants' employees on a workweek-by-workweek basis, the Wage and Hour Division used Defendants' testimony concerning the typical shift hours, typical number of days per workweek each employee worked, and typical days of the week each employee worked, in addition to certain documents Defendants provided to the Wage and Hour Division, including handwritten records of cash payments created by Defendants during the investigation. Erickson Decl. ¶ 18.

39. The Wage and Hour Division investigator had learned during the course of the investigation that employee Worawut Jala's weekly schedules differed substantially from the schedule Defendant Neampong stated that Jala worked during her deposition. For this reason, the Wage and Hour Division used both the information concerning Jala's schedule that the investigator had gathered during the investigation, including employee interviews, and Defendants' testimony concerning the number of hours per day employees worked to reconstruct Jala's hours worked. Erickson Decl. ¶ 19.

40. Since Defendants did not maintain records of the cash wages that employees actually received and Defendants' payroll records were incomplete and inaccurate, to determine the total compensation that employees received on a workweek-by-workweek basis, the Wage and Hour Division used Defendants' testimony concerning the typical shift rates and the typical number of shifts per workweek each employee worked, in addition to certain documents Defendants provided to the Wage and Hour Division, including handwritten records of cash payments created by Defendants during the investigation. Erickson Decl. ¶ 20.

41. The Wage and Hour Division first divided the reconstructed total compensation Defendants paid to each employee for each workweek by the reconstructed hours that employee worked in the workweek to determine the employee's regular rate of pay for the workweek, per the governing regulations. For employees whose rate of pay fell below the Massachusetts state minimum wage in effect, the Wage and Hour Division used the state minimum wage in effect at the time as the employee's regular rate of pay in an overtime workweek, which is also consistent with the Wage and Hour Division's practices and the governing regulation. Erickson Decl. ¶ 21.

42. The Wage and Hour Division then multiplied one-half each such employee's regular rate of pay by the number of hours worked over 40 to obtain the half-time overtime premium Defendants owe the employee for that workweek. Erickson Decl. ¶ 22.

43. For employees whose rate of pay fell below the applicable regular rate (the Massachusetts state minimum wage) in effect during an overtime workweek, the Wage and Hour Division also calculated back wages owed in an amount equal to the difference between the applicable regular rate in effect and the lower rate paid to the employee by multiplying that difference by the employee's total work hours, which is consistent with the Wage and Hour Division's practices and the governing regulation. Erickson Decl. ¶ 23.

44. Using the above methodology, the Wage and Hour Division calculated that Defendants owe the following employees the following overtime back wage amounts:

- Fredy Ramon Fuentes Alvarez—$28,672.50 in unpaid overtime premiums

- Marco Luna Arias—$4,963.00 in unpaid overtime premiums
- Warangtip Asci—$13,370.00 in unpaid overtime premiums
- Suchitra Chonglakmani—$21,852.00 in unpaid overtime premiums
- Worawut Jala—$2,777.63 in unpaid overtime premiums
- Charin Jiraratwattana—$16,872.95 in unpaid overtime premiums
- Hue Lam—$2,190.00 in unpaid overtime premiums
- Busada Samransook—$1,314.00 in unpaid overtime premiums
- Thita Sirisobhana—$2,899.50 in unpaid overtime premiums
- Wiyada Srisuwanporn—$764.50 in unpaid overtime premiums
- Nutcha Wongwutthiphat—$6,312.50 in unpaid overtime premiums
- Settawut Wongwutthiphat—$28,029.75 in unpaid overtime premiums

Erickson Decl. ¶ 24; Ex. 5 to Erickson Decl.

### Tip-keeping Violations and Withheld Tips Computations—29 U.S.C. § 203(m)(2)(B)

45. During the Investigation Period, Defendants' front-of-the-house employees received tips from customers. Interrogatory Resp. No. 10 (Ex. 4 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 60:10–18, 69:14–17 (Ex. 3 to Wilkinson Decl.).

46. The front-of-the-house employees had to collect the tips they received and put the tips in a box. Aug. 27, 2021 Sweet Lemon Dep. at 69:9–24 (Ex. 3 to Wilkinson Decl.).

47. Defendants kept all tips that employees received during the period from March 23, 2018 to November 13, 2019. RFA Resp. No. 1 (Ex. 2 to Wilkinson Decl.); Interrogatory Resp. No. 10 (Ex. 4 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 69:14–24 (Ex. 3 to Wilkinson Decl.).

48. The Wage and Hour Division calculated that Defendants owe their employees a total of $29,880.98 in withheld tips and an equal amount in liquidated damages, for a total of $59,761.96. Erickson Decl. ¶ 16; Ex. 5 to Erickson Decl.

49. During the Wage and Hour Division's investigation, Defendants provided to the Wage and Hour Division a document that included the total dollar amount of tips that Defendants had kept each month. Erickson Decl. ¶ 14; Ex. 3 to Erickson Decl.; Aug. 27, 2021 Sweet Lemon Dep. at 73:10–75:2 (Ex. 3 to Wilkinson Decl.).

50. Defendants did not maintain records of the amount of tips received by each employee. Aug. 27, 2021 Sweet Lemon Dep. at 71:11–13 (Ex. 3 to Wilkinson Decl.).

51. Neampong earned approximately $300.00 to $400.00 per week in tips from customers whom she personally served as a server. Aug. 27, 2021 Sweet Lemon Dep. at 72:23–73:3 (Ex. 3 to Wilkinson Decl.).

52. To compute the estimated amount of tips withheld by Defendants, the Wage and Hour Division used $350.00 per week, the midpoint of Neampong's approximation of her weekly tips, as the amount of tips that Neampong directly received from customers for her work as a server. Erickson Decl. ¶ 25.

53. The Wage and Hour Division multiplied $350.00 per week by four workweeks per month to estimate that Neampong directly received tips totaling $1,400.00 each month from customers for her work as a server. Erickson Decl. ¶ 26.

54. For the period from April 2018 onward, the Wage and Hour Division first subtracted $1,400.00 per month from each month's total tip amounts, as reported by Defendants, to account for the tips that Neampong directly received from customers for her work as a server. Erickson Decl. ¶ 27.

55. The Wage and Hour Division divided the remaining tips for each month from April 2018 onward by the total number of hours worked by servers in the workweeks of that month to compute an hourly tip amount for each month. Erickson Decl. ¶ 28.

56. The Wage and Hour Division then multiplied the particular month's hourly tip amount by the number of hours a server worked in a workweek of that month to estimate the amount of tips the server had received from customers in that workweek. Erickson Decl. ¶ 29.

57. Using the above methodology, the Wage and Hour Division calculated that Defendants owe the following employees the following tip amounts:

- Warangtip Asci—$8,180.78 in withheld tips
- Suchitra Chonglakmani—$8,767.72 in withheld tips
- Worawut Jala—$5,497.88 in withheld tips
- Hue Lam—$1,615.64 in withheld tips
- Kawinaratt Runruengthitikul—$2,225.60 in withheld tips
- Nutcha Wongwutthiphat—$3,593.36 in withheld tips

Erickson Decl. ¶ 30; Ex. 5 to Erickson Decl.

### Liquidated Damages and Willfulness

58. Defendants paid all employees in cash each week. Aug. 27, 2021 Sweet Lemon Dep. at 39:13–19, 47:12–14 (Ex. 3 to Wilkinson Decl.).

59. Defendants' cash payments to employees were not recorded. Interrogatory Resp. No. 7 (Ex. 4 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 61:14–62:3 (Ex. 3 to Wilkinson Decl.).

60. Defendants required employees who received payroll checks at the end of the month to return the check in exchange for the cash payments that Defendants paid weekly. Aug. 27, 2021 Sweet Lemon Dep. at 57:25–58:7, 63:16–20 (Ex. 3 to Wilkinson Decl.).

61. Defendants maintained incomplete payroll documents that included an inaccurate, inflated pay rate for at least one employee. Aug. 27, 2021 Sweet Lemon Dep. at 39:1–12, 47:9–11, 56:13–16, 58:8–11 (Ex. 3 to Wilkinson Decl.); Oct. 26, 2021 Neampong Dep. at 33:25–34:8 (Ex. 1 to Wilkinson Decl.).

62. For at least one employee who worked more than 40 hours in a workweek, Defendants did not include information on their payroll documents to show that the employee worked more than 40 hours in a week. Aug. 27, 2021 Sweet Lemon Dep. at 65:8–14 (Ex. 3 to Wilkinson Decl.).

63. Prior to the Wage and Hour Division's investigation, Defendants did not consult with an accountant, attorney, or anyone else or read any materials from the Department of Labor to determine if they were in compliance with the FLSA's tip-keeping provisions. Aug. 27, 2021 Sweet Lemon Dep. at 45:16–24, 46:10–15 (Ex. 3 to Wilkinson Decl.).

64. Prior to the Wage and Hour Division's investigation, Defendants failed to take any actions, including consulting with an accountant, an attorney, or any other person or reading materials from the Department of Labor, to determine if they were in compliance with the FLSA's overtime provisions. Aug. 27, 2021 Sweet Lemon Dep. at 44:4–9, 45:25–46:15 (Ex. 3 to Wilkinson Decl.).

65. Prior to the Wage and Hour Division's investigation, Defendants relied on their tax preparer to keep them in compliance with the FLSA. Interrogatory Resp. No. 19 (Ex. 4 to Wilkinson Decl.).

**Violations of Anti-Retaliation Provision of FLSA—29 U.S.C. § 215(a)(3)**

66. Certain of Defendants' employees cooperated or were about to cooperate with the Wage and Hour Division's investigation of Defendants' wage and hour and tip-keeping practices. Erickson Decl. ¶ 8.

67. Certain of Defendants' employees gave written statements to or were interviewed by the Wage and Hour Division investigator during the investigation. Erickson Decl. ¶ 9.

68. Defendant Neampong told all of the employees about the Wage and Hour Division's investigation. Oct. 26, 2021 Neampong Dep. at 11:14–12:15 (Ex. 1 to Wilkinson Decl.).

69. Defendant Neampong knew that employees were aware of the Wage and Hour Division's investigation. Oct. 26, 2021 Neampong Dep. at 11:21–12:5 (Ex. 1 to Wilkinson Decl.).

70. Defendant Neampong was aware that certain employees were talking to the Wage and Hour Division investigator. Oct. 26, 2021 Neampong Dep. at 16:12–17:1 (Ex. 1 to Wilkinson Decl.).

71. During the investigation, Defendant Neampong asked one employee whether that employee had spoken to the Wage and Hour Division investigator. Oct. 26, 2021 Neampong Dep. at 13:21–14:5 (Ex. 1 to Wilkinson Decl.).

72. During the investigation, Defendant Neampong asked certain front-of-the-house employees to sign statements concerning their pay rate and tips. RFA Resp. Nos. 17, 18 (Ex. 2 to

Wilkinson Decl.); Interrogatory Resp. No. 17 (Ex. 4 to Wilkinson Decl.); Aug. 27, 2021 Sweet Lemon Dep. at 68:13–69:5 (Ex. 3 to Wilkinson Decl.); Oct. 26, 2021 Neampong Dep. at 35:21–24 (Ex. 1 to Wilkinson Decl.).

73. Defendant Neampong's accountant prepared the statements for the employees to sign because Defendant Neampong believed that the servers had agreed to accept the daily pay rate but not keep their tips. Aug. 27, 2021 Sweet Lemon Dep. at 68:13–69:5 (Ex. 3 to Wilkinson Decl.).

74. The statements read in part: "I request my employer to pay me $12.00 an hour. I do not receive tips." RFA Resp. No. 17 (Ex. 2 to Wilkinson Decl.); Erickson Decl. ¶ 15; Ex. 4 to Erickson Decl.

75. Defendants provided the signed statements to the Wage and Hour Division during the investigation. Interrogatory Resp. No. 17 (Ex. 4 to Wilkinson Decl.); Erickson Decl. ¶ 15.

Post Office Address:

U.S. Department of Labor
Office of the Solicitor
John F. Kennedy Federal Building
Room E-375
Boston, MA 02203
TEL: (617) 565-2500
FAX: (617) 565-2142




Date: December 10, 2021

Seema Nanda
Solicitor of Labor

Maia S. Fisher
Regional Solicitor

Mark A. Pedulla
Wage and Hour Counsel

/s/ Emily V. Wilkinson
Emily V. Wilkinson
Trial Attorney
wilkinson.emily.v@dol.gov
MA BBO No. 699512

U.S. Department of Labor
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the CM/ECF system on December 10, 2021, shall be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

                                                /s/ Emily V. Wilkinson  
                                                Emily V. Wilkinson